Bergan, J.
Statutory authority to select a site for a capital
project of the City of New York is expressly vested in a Site Selection Board, the members of which are stated by the law *189 itself to be the Director of City Planning, the Director of the Budget, the Commissioner of Real Estate, the Comptroller and the President of the Borough in which the site is located (New York City Charter, § 227).
The petitioners, who are owners of land in Queens which will be acquired as part of a projected new high school, contend that the statutory scheme requires a further approval of the site by the Board of Estimate after the Site Selection Board has acted and before acquisition proceedings may be directed by the Mayor.
The question of statutory construction is thus very narrow in scope. The court at Special Term held such additional approval by the Board of Estimate was needed; the Appellate Division held that the statute had been complied with by approval of the Board of Estimate before the site was selected and the Mayor was authorized to direct acquisition proceedings. A reading of the statute sustains the view taken at Appellate Division.
The Capital Budget for 1966-1967 adopted by the City Council and the Board of Estimate contained an item “ 106a E-1290 New High School Queens, Location Undetermined Including Site”. This was part of a general appropriation for the Board of Education for school projects.
The appropriation was in conformity with the Charter which provides that indebtedness for a capital project may be contracted only where there has been an appropriation in the Capital Budget (Charter, § 225) and this after prescribed public hearings which are not in dispute here (Charter, §§ 216, 217, 219, 221).
Following’ such appropriation, however, the initiation of the project rests solely in the executive judgment of the Mayor (Charter, § 228). This control and initiation of capital projects expresses a central policy of the Charter concentrating executive responsibility in the hands of the Mayor.
The first step in that executive action was taken by the Mayor in this case on June 14, 1966 by requesting the Board of Estimate to conduct a public hearing on the project which was then in the general form stated in the budget “ location undetermined ”. Section 228 provides that “before initiating” such a capital project in the budget by directing the acquisition *190 of the property, the Mayor “ shall cause a public hearing to be held ” by the Board of Estimate.
This direction was followed exactly in the present case. The Board of Estimate held a public hearing on July 8. There was no opposition. Thereafter, on October 10, the Mayor initiated the project by determining and certifying to the Comptroller the amount of obligations to be used in financing.
The project having thus been initiated, the time then became appropriate for the Site Selection Board to function under section 227 of the Charter to select a site. It conducted a public hearing on due notice June 19, 1967 at which petitioners were heard in opposition to the proposed site.
Again following the language of section 228, the Mayor’s direction to acquire, which had now cleared through both the Board of Estimate and the Site Selection Board, went to the Corporation Counsel on September 1, 1967. This direction, says the statute, “ shall constitute an order to the corporation counsel and such agency to proceed with such capital project ” (Charter, § 228).
"Whatever may be the argument for or against further action by the Board of Estimate on the site itself, it is manifest further approval is not required by the statute after the Site Selection Board has acted. The statute has been followed precisely in this present case.
The time at which the 'Site Selection Board shall act is not stated in relation to sequence with the other steps in the initiation of a project by the Mayor. But it is obvious that no site should be selected under the scheme of the statute before the Mayor’s directive stated in section 228 and the resulting hearing by the Board of Estimate, because until after that hearing there would be no reasonable certainty the project would go ahead.
On the other hand, there is no need or statutory requirement to go back again to the Board of Estimate for its approval after the site is selected because the Site Selection Board, rather than the Board of Estimate, is given express statutory power to select the site under subdivision f of section 227.
This result is consistent, as the city also shows, with administrative construction of the statute by Mayors since the present Charter became effective on January 1, 1963.
*191 The record shows two examinations, not one, of this project by the Board of Estimate. Its consideration did not end with the approval of the capital budget as an appropriation. The initiation of the project by the Mayor, after the appropriation, was directed to the Board of Estimate for its consideration and that board held a hearing and specifically approved this project as initiated by the Mayor. It did not need to approve the site because, as it has been seen, site selection was within the statutory jurisdiction of the Site Selection Board.
The order should be affirmed, without costs.